**Dwight C. BEATTY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1527.

District of Columbia Court of Appeals.

Argued Dec. 8, 1987.
Decided July 14, 1988.

Ronald A. Goodbread, Washington, D.C., for appellant.

Sharon A. Sprague, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Mary Ellen Abrecht and Robert K. Reed, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, ROGERS and STEADMAN, Associate Judges.

NEWMAN, Associate Judge:

Beatty contends the evidence identifying him as one of the two bandits who committed the armed robberies and related offenses at issue in this case was insufficient to sustain his convictions. We agree and reverse.[1]

## I

On November 11, 1981, two men committed armed robbery and related offenses at Shoe World, a ladies shoe store. Present in the store at the time and victimized by the bandits were the manager—Keith Smothers, two employees—Yvette Attaway and Michael Hawkins, and a customer—Pauline McDaniels. One of the bandits was armed with a pistol; the other carried a Safeway bag into which the robbery proceeds were placed. At trial, the government sought to prove that Beatty was the bagman.

After the robbery was completed and the bandits fled, the police were called. When they arrived, Smothers gave descriptions of both the robbers. He described the bagman as shorter than and not as heavy as the gunman (who he said was 6'–6'1", and weighed 175 pounds), dark complexioned and with a full hairstyle. He stated he did not think that the bagman had any facial hair.

On December 1, 1981, Smothers was shown an array of nine photographs. He identified Beatty's photograph saying: "This guy looks like him. His face rings a bell and he is the one without the gun." On April 15, 1982, Smothers viewed a videotape of a line-up. He twice identified Beatty as one of the robbers, saying he "looks like him" and "this looks like the guy."

A photo array containing a picture of Beatty was shown to the others present during the robbery (Attaway, Hawkins, and McDaniels). Likewise, the line-up (or a videotape of same) containing Beatty was exhibited to these three witnesses. None of them were able to make any identification of the bagman.[2]

A pretrial hearing was held to suppress identification testimony; Smothers was present during some of that hearing. After the hearing, Smothers told a police detective that Beatty did not look like the person who was the bagman in the robbery, stating that Beatty was lighter complexioned than the bagman.

Smothers testified that he observed the two robbers for about 45 to 50 seconds. During this time, the gunman was facing him while the bagman was positioned catty-corner about four to five feet away. He stated that he was looking at the gunman rather than the bagman, but could see the bagman. Smothers said that at the time he made his pretrial identifications of Beatty, "I was pretty positive," and that he said Beatty "definitely" looked like the bagman. He was not asked by the government to make an in-court identification. When asked on cross-examination now that he had seen Beatty in person, was he sure that Beatty was the bagman, he answered,

---

1. Given this ruling, we need not decide the other issues Beatty raises: (1) error in denying his motion to suppress identification based on unconstitutional suggestivity; (2) deprivation of a speedy trial, and (3) failure of the trial court to impose appropriate "Jencks Act" sanctions.

2. Hawkins did identify a person (other than Beatty) in the line-up as looking like the gunman.

"No, I'm not." He explained on redirect that his uncertainty was because he remembered the bagman to have been someone who was darker complexioned than Beatty, without facial hair and with a smaller nose than Beatty. He repeated that Beatty did not look like the bagman. When asked by the prosecutor whether he "wanted to recant" his pretrial identifications, he answered "No."

The other three persons present during the robbery (Attaway, Hawkins and McDaniels) each testified at trial and recounted the events. None was able to make any identification. However, when asked whether Beatty had participated in the robbery—specifically whether he was the bagman—Attaway described the bagman as about 5'6" to 5'7" (about 2 inches shorter than she is) as being "dark skinned" ("about my complexion") and medium build. A courtroom demonstration showed that Beatty was three to four inches taller than Attaway. She further testified that Beatty was noticeably lighter complexioned than she and the bagman. The government presented no other evidence tending to link Beatty to the armed robbery. Beatty presented an alibi defense which was unimpeached.

## II

In determining the sufficiency of the evidence, we must view the evidence in its light most favorable to the government, leaving to the trier of fact the resolution of credibility and the right to draw justifiable factual inferences. *McEachin v. United States,* 432 A.2d 1212, 1218 (D.C.1981). We can only determine that the evidence is insufficient if we conclude, as a matter of law, that no reasonable juror acting reasonably, could convict on the evidence presented. *See Patterson v. United States,* 479 A.2d 335 (D.C.1984). Where the evidence of the identity of the perpetrator of the crime consists solely of the eyewitness testimony of one witness, the test is whether a reasonable person could find the identification convincing beyond a reasonable doubt,

given the surrounding circumstances. *Malloy v. United States,* 483 A.2d 678 (D.C.1984); *Smith v. United States,* 389 A.2d 1356 (D.C.1978) (per curiam). In evaluating eyewitness identification testimony, we look to such factors as the ability of the witness to make a meaningful identification—the witness' opportunity to observe and the length of time of the observations, the lighting conditions, the length of time between the observations and the identification, the stimuli operating on the witness at the time of the observation, as well as the degree of certainty expressed by the witness in making the identification. *See Crawley v. United States,* 320 A.2d 309, *rehearing en banc denied,* 325 A.2d 608 (D.C.1974). Where discrepancies exist between a description given of the perpetrator and the defendant's actual appearance, the conviction will still be affirmed if there is other evidence showing that the identification is reliable. *Hill v. United States,* 541 A.2d 1285 (D.C.1988); *United States v. Butler,* 205 U.S.App.D.C. 19, 636 F.2d 727 (1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3010, 69 L.Ed.2d 392 (1981). It is within this legal framework that Beatty's claim of evidentiary insufficiency must be evaluated.

However, before we proceed to that evaluation, we pause to consider a related matter. That is, was the evidence of the extrajudicial identification of Beatty by Smothers possessed of sufficient reliability to be admissible at all, or in the alternative, to survive a motion to strike.[3]

At common law, testimony of prior extrajudicial identifications was generally inadmissible. *See* Annotation, *Extrajudicial Identification of Defendant in Criminal Case,* 70 A.L.R. 910, 915 (1931); *see also Admissibility of Extrajudicial Identification As Substantive Evidence,* 19 Md.L. Rev. 201 (1959). We have departed from this view. As we recognized in *Morris v. United States,* 389 A.2d 1346, 1350–51 (D.C.1978), our previous decision in *Mack v. United States,* 150 A.2d 477 (D.C.1959), rejected the traditional common-law rule

---

3. Beatty did not object to the evidentiary admissibility of the extrajudicial identification testi-mony, nor did he move to strike it after it was admitted.

and held the prior extrajudicial identification admissible to corroborate the in-court identification of the defendant as the perpetrator by the eyewitness. We likewise noted in *Morris* that we were bound by *Clemons v. United States,* 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969) (where declarant testifies at trial, and is thus subject to cross-examination, evidence of prior extrajudicial identification admissible to corroborate the in-court identification made by declarant). Later, in *In re L.D.O.,* 400 A.2d 1055 (D.C.1979), we revisited the issue. We explained that the justification for admitting the prior identification was two-fold: (1) the declarant was available at trial for cross-examination, and (2) the reliability of the extrajudicial identification. In *In re L.D.O.,* the victim/declarant (Russell) made an extrajudicial identification of the defendant from a photo array approximately one week after the robbery. According to Detective Miller, Russell selected L.D.O.'s photo, saying he was fairly certain of his identification since he was familiar with L.D.O. from the neighborhood. Russell testified at trial, thus satisfying the first prong of the test. He was not asked to make an in-court identification; he testified that his pretrial identification had been made while he was in the hospital, his vision was blurred and that he was not in the least bit positive when he made this identification. He stated that he told Detective Miller that he was less than forty percent certain of the identification. Detective Miller contradicted this testimony. We held that Russell's trial testimony sufficiently dissipated the reliability predicate to render the pretrial identification evidence inadmissible. We cited with approval *Commonwealth v. Swenson,* 368 Mass. 268, 331 N.E.2d 893 (1975) (prior extrajudicial identification not admissible where witness testifies that he did not give

a "positive identification"), and *Gibbs v. State,* 7 Md.App. 35, 253 A.2d 446 (1969) (where an eyewitness says he was mistaken in his extrajudicial identification, that identification is completely lacking in evidentiary value). In our subsequent cases of *Rice v. United States,* 437 A.2d 582 (D.C.1981) (per curiam), and *Wilkerson v. United States,* 427 A.2d 923 (D.C.) *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981), we held that the prior extrajudicial testimony was admissible even though the declarant at trial was not asked to make an in-court identification. We rejected appellants' reliance upon *In re L.D.O.,* finding that case to be simply "inapposite." [4]

If after the uncertainties created by the trial testimony of Smothers, Beatty had objected to the evidentiary admissibility of the testimony of the prior extrajudicial identifications (or, thereafter, properly moved to strike such evidence), the trial court would have had to make the legal determination of whether, given the circumstances surrounding the observation and identification, *see In re L.D.O., supra; Crawley, supra,* as well as the declarant's trial testimony, *see In re L.D.O., supra; see also United States v. Butler, supra, Commonwealth v. Swenson, supra,* the extrajudicial identification lacked sufficient reliability to be admissible. We have previously recounted the circumstances surrounding the observation and subsequent identification. We have also recounted Smothers' repeated testimony at trial of the specific dissimilarities between the bagman and Beatty once Smothers saw Beatty in the flesh. Yet, we have also noted that when asked whether he wanted to "recant" his prior identification, he said "no." [5] As previously stated, since no objection was made, the trial court was not called upon to make the appropriate ruling; nor are we

---

4. This term, the Supreme Court held that the Confrontation Clause of the Sixth Amendment is not violated when extrajudicial pretrial identification evidence is admitted and the declarant, although testifying at trial, "is unable, because of memory loss, to explain the basis for the identification." *United States v. Owens,* —— U.S. ——, 108 S.Ct. 838, 845, 98 L.Ed.2d 951 (1988).

5. "Recant" is "legalese" which may be beyond the knowledge of some witnesses. Many simpler ways of phrasing the question come to mind. If the parties are unwilling during their examination to put the question in simple English, it is desirable for the court to do so *sua sponte* at the appropriate time.

called upon to review any ruling. We have taken the time to discuss the issue to highlight it for the trial court and party litigant.[6] More importantly, an elucidation of the evidence bearing on the reliability of the pretrial identification is key to our evaluation of the sufficiency of the evidence, even deeming the evidence properly admitted. For, under *Hill v. United States, supra,* and *Crawley v. United States, supra,* reliability is the touchstone of our evaluation of the sufficiency of evidence where that evidence consisted solely of one eyewitness identification.

█ As we have previously stated, the only evidence tying Beatty to the commission of these offenses was Smothers' two pretrial identifications. Those identifications were meaningfully undercut by his testimony at trial that after first seeing Beatty at the pretrial suppression hearing, he told a police detective that Beatty did not look like the bagman. He specified in his testimony the differences between Beatty's appearance and that of the bagman—Beatty was lighter complexioned, without facial hair and had a smaller nose than did the bagman. Although declining the offer to "recant" his pretrial identifications, he persisted in his testimony that Beatty did not look like the bagman. None of the other victims, all who had similar opportunity to observe as did Smothers, was able to make any identification. How-

ever, the description of the bagman given by Ms. Attaway was significantly at variance with Beatty. At trial, Ms. Attaway specified the differences between Beatty and the bagman. Beatty was lighter complexioned and taller than the bagman. All the trial testimony of Smothers and Attaway about the identity of the bagman was inconsistent with Beatty. On the other hand, we have the hearsay pretrial identifications where Smothers said Beatty "looked like" the bagman, "his face rings a bell," "he is the one without the gun." Viewing the evidence under the standard mandated by *Hill* and *Crawley,* we hold that the identification of Beatty by Smothers as the bagman, standing alone as the only probative evidence, lacks the degree of reliability necessary to sustain the conviction; i.e., convincing beyond a reasonable doubt.

*Reversed.*

---

**6.** A thought occurs to us which may be of use to trial judges in future cases. There are two means by which the trial court can make a pretrial determination of the question of evidentiary admissibility, as distinguished from the due process suppression issue presented by *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and its progeny. Where a motion to suppress identification on due process grounds is heard and denied, the trial court, in its discretion, may take the additional testimony necessary to determine the admissibility of the pretrial identification testimony on an evidentiary basis tested by the principles enunciated in *In re L.D.O., supra,* and this case. If no suppression motion has been filed, the court, in its discretion, may entertain a motion *in limine* to exclude the pretrial identification testimony on this basis. In an appropriate case, the trial judge may rule the pretrial identification evidence is inadmissible on this evidentiary basis. Under appropriate circumstances, the government may appeal this ruling.

D.C.Code § 23–104(a)(1) (1981). If no appeal is taken and the government concedes that there is no other sufficient evidence to get the issue of identity to the jury, a "stipulated trial" could be conducted with the affirmative consent of both parties, resulting in the entry of a verdict of not guilty as a matter of law. If on the other hand, the trial court rules the pretrial identification evidence admissible, and there is no other probative evidence on identity, the trial court could then rule as a matter of law whether this evidence would be sufficient to sustain a jury verdict for indeed there may be situations where the evidence may have a sufficient reliability to be admissible but standing alone, be insufficient to sustain the government's burden of proof. Thereafter, a "stipulated trial" could be held as previously stated.

Use of one of these pretrial methods of determining the evidentiary admissibility tested by *L.D.O., supra,* and this case, may result in substantial economy of time in appropriate cases.