Terrence O. **GREENWOOD**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 93–CF–1232.

District of Columbia Court of Appeals.

Argued April 18, 1995.

Decided June 5, 1995.

Mindy A. Daniels, for appellant.

Molly A. Meegan, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before TERRY, KING, and RUIZ, Associate Judges.

KING, Associate Judge:

This case presents an issue of first impression: whether the trial court, after a pretrial identification suppression hearing during which the identification witness did not testify, upon finding that the identification procedures were not unduly suggestive, abused discretion in delaying a determination of the reliability of the identification until after the identifying witness testified at trial. Concluding that such a course is not an abuse of discretion, we affirm.

Terrence O. Greenwood was convicted of first degree burglary, two counts of sodomy, and assault with intent to rape stemming from an attack upon a woman inside her apartment on a summer afternoon in 1992. The victim testified that earlier in the day she had gone to the swimming pool of her upper Connecticut Avenue apartment building. When she arrived, at about 1:15 p.m., a lifeguard and others dressed in swimming apparel were present, including a male in his twenties, appellant Greenwood, whom the victim later identified as her assailant.

Several hours later it began to rain, and the victim and the other swimmers, including Greenwood, left the pool area and entered the elevator. When the elevator reached her floor, only Greenwood and the victim remained. The victim left the elevator, walked to the door of her apartment, and opened it with her key. Greenwood, who had followed the victim from the elevator, then forced his way into her apartment where a brief strug-

gle took place inside the door. A neighbor would later testify that she heard a woman's scream coming from the hallway outside of the victim's apartment at about the time Greenwood forced the victim into her apartment.

After he gained entry to the apartment, Greenwood sodomized the victim and unsuccessfully attempted sexual intercourse against the victim's will. Greenwood then departed, and the victim promptly reported the incident to friends who lived in the apartment building and to the police. Several days after the assault, she identified Greenwood from a photo array, and he was subsequently arrested in an apartment in Wheaton, Maryland, a nearby suburb of the District. Thereafter, the victim identified Greenwood in a lineup.

The parties stipulated that DNA evidence established that the probability that Greenwood was the source of semen found on the victim's underpants was not less than 2000 to 1. In addition, one of the keys, found on a key ring recovered from the victim's apartment near where she and the assailant had struggled, matched the key to the apartment in Wheaton where Greenwood was arrested.[1] Greenwood's uncle, who lived in the apartment building across the street from the victim's apartment building, testified that Greenwood, who did not live with the uncle, spent the night before the assault in the uncle's apartment. The uncle testified that residents of his apartment building have access to pool passes usable at the swimming pool located at the victim's apartment building, and that Greenwood left his apartment

the day of the offense at approximately 1:00 p.m. saying he was going swimming. The uncle left at about the same time, and when he returned near midnight, Greenwood was asleep in the apartment. Finally, one of the lifeguards testified that when he relieved another lifeguard in the middle of the afternoon, Greenwood (whom he identified in court), the victim, and other swimmers were present, and that everyone left the pool area when it began to rain. Although Greenwood presented no evidence, the focus of his defense was to cast doubt upon the identification of him as the assailant.

At the pretrial identification suppression hearing the government presented testimony from several police officers regarding the circumstances of the identification procedures. The motions judge rejected Greenwood's claim that the procedures were unduly suggestive. At the government's request, however, but over Greenwood's objection, the motions judge agreed that the reliability determination could be made after the victim had testified at trial, thus avoiding the necessity for the victim to appear at both the suppression hearing and the trial. The trial judge ultimately found that the identification by the victim, who had an opportunity to observe Greenwood for approximately two hours at the swimming pool and for a considerable period of time on the elevator and during the course of the assault, was reliable.

The only substantial issue raised in this appeal is whether the trial court abused discretion in delaying the reliability finding until after the identifying witness testified at trial.[2] Our analysis of that issue begins with

1. The Wheaton apartment was leased to a male whose last name was the same as the appellant's mother's last name.

2. The victim was extensively cross-examined concerning a civil suit she had filed against Greenwood, and another civil suit she was contemplating against the management of the apartment building. The trial judge, however, would not permit defense counsel to pose any questions, to the one lifeguard who testified, concerning the possible suit against the apartment owners in which the victim was expected to claim that the lifeguards were negligent in permitting Greenwood to use the pool facilities. Greenwood contends that in not permitting that line of cross-examination, the trial judge committed reversible

error. While we have some concerns about disallowing all inquiry on that point, we conclude that, assuming for the sake of argument there was error, it was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The evidence, which included the strong identification testimony by the victim, together with other evidence outlined in the text, was so overwhelming that, even without the lifeguard's testimony, conviction was virtually inevitable. *Id.* at 684, 106 S.Ct. at 1438.

Greenwood also challenges the motions court's ruling that the identification procedures were not unduly suggestive and that the trial judge erred in concluding the victim's identification was reliable. Because all of these findings are amply

the two-part test we employ to determine the admissibility of an eyewitness identification. First, the trial court must determine whether the procedures are so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 380–81, 34 L.Ed.2d 401 (1972); *see Stewart, supra*, 490 A.2d at 622. If the trial court finds undue suggestivity, it must then determine whether the identification was nonetheless reliable. If the identification is reliable, it is admissible, as is evidence relating to the identification procedures that were found to be suggestive. *Neil*, 409 U.S. at 199, 93 S.Ct. at 382.

■ On the other hand, if the identification procedures are not unduly suggestive, the details of those procedures are admissible and no reliability finding is necessary. Nonetheless, we have frequently encouraged trial judges, even when finding there was no suggestivity, to make explicit reliability findings.[3] We have done so because, in that occasional case where we disagree with the no-suggestivity finding, or where that finding presents a close question, the appeal can be resolved based on the outcome of the reliability determination without the need to remand for findings on that point. In short, while we have regularly encouraged trial courts to make a reliability finding, and continue to do so, we have never required such a finding.

■ Here the government requested that the reliability finding be made after the victim's trial testimony in order to spare her the ordeal of having to testify twice about the unpleasant events she would have to relate. The motions judge agreed to the request, reasoning:

If I am not required to make those determinations at the motions hearing, then I obviously retain some discretion to defer when I am going to make them and I am exercising that discretion.

In reaching that conclusion, the motions judge correctly assessed the proper scope of his discretion.

■ The trial judge "has the responsibility of managing the conduct of a trial." *Williams v. United States*, 228 A.2d 846, 848 (D.C.1967). In the federal courts, trial judges are governed by the FEDERAL RULES OF EVIDENCE which provide that:

The Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

FED.R.EVID. 611(a). We have said, specifically with respect to this rule, that "[w]hile the FEDERAL RULES OF EVIDENCE are not generally applicable to the Superior Court ... we have had occasion to consider them as authoritative on issues of law of the District of Columbia." *Yeager v. Greene*, 502 A.2d 980, 985 n. 13 (D.C.1985), citing *Laumer v. United States*, 409 A.2d 190, 198–99 (D.C.1979) (en banc). We endorse the principles set forth in Rule 611(a) here. In interpreting that rule, one federal circuit court has held that the trial court did not abuse discretion by permitting a witness to be called to testify out-of-turn, observing that, if convinced that practical reasons justify calling a witness out-of-turn, trial judges in the exercise of discretion, may do so. *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 823 (3d Cir.1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978). Moreover, we have held that "the trial judge has broad discretion concerning whether a witness may be recalled to the stand after testifying...." *Brown v. United States*, 388 A.2d 451, 456 (D.C.1978). Thus, it is well recognized that the trial judge possesses considerable discretion in responding to requests by counsel concerning the timing of a witness's appearance.

In this case the victim testified at trial, and the trial judge, after hearing that testimony,

supported by the evidence and are in accord with the law, we reject those claims. *Stewart v. United States*, 490 A.2d 619, 622 (D.C.1985); *McClain v. United States*, 460 A.2d 562, 566 (D.C.1983).

**3.** *See, Henderson v. United States*, 527 A.2d 1262, 1269 (D.C.1987); *Johnson v. United States*, 470 A.2d 756, 759 n. 1 (D.C.1983).

concluded that her identification of Greenwood was reliable. Greenwood does not contend that his opportunity to examine the witness on the question of the reliability of her identification was in any way curtailed. Indeed, since defense counsel's aim at trial was to undermine the witness's testimony that Greenwood was her assailant, any questions directed to that end would also serve as an attack upon the "reliability" of the identification.[4] Moreover, we recently held that the trial court did not commit reversible error in barring the defense's attempt to call the identification witness at the pretrial identification suppression hearing on the "suggestivity" issue where the identifying witness's testimony at trial was consistent with the testimony of the arresting officer, who observed the show-up, and who was the only witness presented by the government at the pre-trial hearing. *Minor v. United States,* 647 A.2d 770 (D.C.1994).

Based on these considerations, because it is within the trial court's discretion to permit witnesses to testify in the order desired by the party calling the witness; there was a reasonable basis for not requiring the witness to testify twice concerning the same subject; and there has been no showing that Greenwood was in any way prejudiced, we hold that the trial court did not abuse discretion by delaying the reliability finding until after the victim had testified at trial.

*Affirmed.*

---

**4.** In the event counsel could show that some questions probing "reliability" should be made outside the presence of the jury, we expect the trial court, in the exercise of its discretion, would excuse the jury to permit such inquiry.