UNITED STATES, Appellant,

v.

Rodney BROWN, Appellee.

No. 96–CO–1247.

District of Columbia Court of Appeals.

Argued March 31, 1997.

Decided Sept. 4, 1997.

---

Gregg A. Maisel, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Alan M. Boyd, Assistant United States Attorneys, were on the brief, for appellant.

Cynthia Katkish, appointed by the court, Washington, DC, for appellee.

Before FERREN and SCHWELB, Associate Judges, and MACK, Senior Judge.

FERREN, Associate Judge:

The United States appeals from the trial court's decision to suppress showup identifications of Rodney Brown by two police officers.[1] The government argues that the trial court applied the wrong legal standard, improperly determining whether the officers' identification testimony was sufficient, standing alone, to sustain a conviction, rather than deciding whether the identifications were constitutionally admissible under the traditional two-part test that focuses on "undue suggestivity" and "reliability." We agree with the government, reverse the suppression order, and remand for further proceedings.

## I.

Officers King Watts and Tommy Miller of the Metropolitan Police Department were stationed at an observation post overlooking the area behind the 800 block of Chesapeake St., S.E. After watching a group of individuals for approximately an hour, they saw the tallest member of the group—whom the officers later identified as appellant Rodney Brown—reach into the trunk of an Oldsmobile, remove an object, and place that object into the waist of his pants in a motion that both officers described as "consistent with someone placing a firearm in their waistband." According to both officers, this individual was wearing a black leather jacket, a sweatshirt with a hood, and a baseball cap. While neither officer conclusively could identify the object as a gun, Officer Miller noted that the man held the object "as if he was

holding the handle of a weapon, with a dark colored object protruding from his hand."

The same man got into another car with the rest of the group and sat in the rear seat behind the driver. The officers issued a lookout for the car, declaring that the tallest individual possessed a suspected firearm. This resulted in a high-speed chase through the District, Maryland, and Virginia. A car from the Bureau of Alcohol, Tobacco, and Firearms joined the chase, and one of the officers in that car saw someone in the pursued vehicle toss a gun out of the right, passenger side; other officers recovered the weapon from the street in the area where it had been seen tossed from the vehicle. The car eventually was stopped, and Brown was removed from the left, rear seat and taken to the police station. Shortly thereafter, in the cellblock, Officers Miller and Watts identified Brown as the tallest individual of the group, the one who had placed the suspected firearm in his waistband before the car sped off.

The trial court granted Brown's motion to suppress the identification testimony of the officers, for reasons we will elaborate below.

## II.

### A.

■ To prevail on a motion to suppress a pretrial identification, a defendant must satisfy the oft-repeated, two-part test for such due process claims. First, the defendant must establish that the " 'identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.' " *Turner v. United States*, 622 A.2d 667, 672 n. 4 (D.C.1993) (quoting *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972)). Second, if the procedure is found impermissibly suggestive, the government may defeat the motion and save the identification by carrying the burden of producing evidence to show that, under all the circumstances, the identification was reliable nonetheless. *See id.*

1. D.C.Code § 23–104(a)(1) (1996) authorizes the government to bring this interlocutory appeal from a suppression order.

■ While noting that a two-part test governs the due process identification analysis, the trial court made no finding that the circumstances surrounding the identification were so impermissibly suggestive as to create a very substantial likelihood of misidentification. Instead, the court observed:

> [S]ingle defendant show-up identifications, as the Court of Appeals has said, are inherently suggestive. They inherently draw you to the appropriate individual. So it's not a big argument about whether or not this is a suggestive situation.

The court then shifted to the second part of the test and suppressed the identifications for insufficient reliability. The trial court, therefore, took the approach to due process—failing to find undue suggestivity but suppressing, nonetheless, for unreliability—that we recently held erroneous in *United States v. Hunter*, 692 A.2d 1370 (D.C.1997).

More specifically, we cannot construe the court's characterization of the showup—that it was "inherently suggestive"—as a finding that the showup was "unnecessarily"[2] or "impermissibly"[3] or "unduly"[4] suggestive, as required for suppression under due process analysis. The trial court therefore erred in failing to make a required finding, "yes" or "no," as to "undue suggestivity," and further erred in concluding that it could suppress the identification on reliability grounds without a predicate finding of "undue suggestivity." *See Hunter*, 692 A.2d at 1375–77 (reversing suppression order where trial court found no undue suggestivity but suppressed for lack of sufficient reliability); *Scales v. United States*, 687 A.2d 927, 937 n. 15 (D.C.1996) ("No reliability determination is required unless the trial court has determined that the eyewitness identification was unduly suggestive."); *Greenwood, supra* note 4, 659 A.2d at 828 ("[I]f the identification procedures are not unduly suggestive, the details of those procedures are admissible and no reliability finding is necessary"). In short: if no undue suggestivity, no suppression—period—without regard to reliability.

■ To the extent that rulings on suggestivity and reliability are factual, we are bound by the trial court's findings if they are supported by the evidence and accord with the law. *See Stewart v. United States*, 490 A.2d 619, 623 (D.C.1985). On the other hand, because suggestivity and reliability ultimately determine the issue of admissibility—a question of law—they are both better characterized as mixed questions of fact and law. *Cf. Funchess v. United States*, 677 A.2d 1019, 1020 (D.C.1996) (holding that probable cause determination presents a mixed question of law and fact). Here, of course, the trial court failed to make an essential finding on suggestivity. Although theoretically the trial court, not this court, should find the subsidiary facts that inform that ultimate determination, we are satisfied that, taking all the identification evidence in the light most favorable to Brown, there can be only one result: no undue suggestivity as a matter of law. In the interests of judicial economy and fairness to the parties, we see no sound reason to prolong the proceeding by remanding for further fact-finding. We, therefore, address the suggestivity inquiry in the required detail, just as we would if the court found the identifications *were* unduly suggestive.

### B.

■ After reviewing the testimony at the pretrial hearing, we conclude that Brown has shown no facts that would make the officers' identifications so unduly suggestive that a reliability inquiry would be required. The trial court did note some discrepancies in the officers' respective testimonies about the circumstances surrounding the identifications. Specifically, the officers gave conflicting answers to whether any of the other suspects from the automobile were in the cellblock area when the officers identified Brown. The officers also disagreed as to whether Brown was in a cell or in the adjacent processing area when the cellblock identifica-

---

2. *Patterson v. United States*, 384 A.2d 663, 665 (D.C.1978).

3. *Singletary v. United States*, 383 A.2d 1064, 1068 (D.C.1978).

4. *Greenwood v. United States*, 659 A.2d 825, 828 (D.C.), *cert. denied*, —— U.S. ——, 116 S.Ct., 326, 133 L.Ed.2d 227 (1995).

tions took place. These discrepancies, however, do not preclude us from resolving the undue suggestivity issue, for, under any view of the facts, the identifications cannot be suppressed on due process grounds.

We have noted that a "degree of suggestibility is inevitable" in showup identifications, but we also have emphasized that "special elements of unfairness" must exist to justify suppression of a showup identification under due process analysis. *Singletary v. United States, supra* note 3, 383 A.2d at 1068; *accord Hunter,* 692 A.2d at 1375; *Turner,* 622 A.2d at 672. In *Turner,* we concluded that police custody, as such, at the scene of the crime soon after the incident was not unduly suggestive even though the suspect was handcuffed. *See Turner,* 622 A.2d at 672. Although Brown's showup identifications occurred at the police station rather than at the crime scene, and took place approximately an hour after the officers had observed Brown, these facts do not alter the analysis, especially since the identifications had to be·delayed and moved because of the suspects' conduct in fleeing the scene and leading the police on a chase throughout the entire metropolitan area. *See Holt v. United States,* 675 A.2d 474, 482–83 (D.C.) (finding no undue suggestivity where officer shot suspect and then identified suspect in hospital where suspect had sought treatment after fleeing officer), *cert. denied,* —— U.S. ——, 117 S.Ct. 176, 136 L.Ed.2d 117 (1996); *Garris v. United States,* 559 A.2d 323, 327 (D.C.1989) (finding no undue suggestivity from showup where suspect in handcuffs was identified at scene of crime twenty-four hours later). The possibility that the officers identified Brown in one another's presence also does not raise concerns of undue suggestivity. *See Hunter,* 692 A.2d at 1375 n. 4; *Harvey v. United States,* 395 A.2d 92, 96 n. 9 (D.C.1978), *cert. denied,* 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979) (no concern of undue suggestivity when three witnesses identified defendant in

each others presence after encountering defendant emerging from courthouse elevator). Finally, because police officers made the identifications, their observations of a suspect in custody at the police station, even in a holding cell, would be less vulnerable to a claim of suggestivity than identifications by lay witnesses would be in similar circumstances, since police witnesses probably would be less likely than laypersons to infer suggested guilt simply from a showup on police premises.

In short, Brown has not established the kind of coercion or intolerable suggestivity that would satisfy the first part of the due process inquiry and lead the court to assess reliability. *Cf. United States v. Walton,* 411 A.2d 333, 336–39 (D.C.1979) (affirming trial court's suppression of identification testimony where officers told witness—after his failure to identify anyone previously—that he was primary suspect, asked witness to take polygraph examination, and witness provided positive identification of defendant literally on way to polygraph test).

Our due process analysis accordingly ends here. *See Hunter,* 692 A.2d at 1376 (noting that when "a showup identification procedure has no special elements of unfairness beyond the suggestivity inherent in any showup, the ·procedure does not offend due process, regardless of the court's views concerning the reliability of the identification" (internal quotation marks omitted)). Due process, therefore, will not preclude admission of the identifications at issue.[5]

### III.

▌ As in *Hunter,* we also must reject Brown's invitation, in ·the alternative, to affirm the trial court's suppression ruling on evidentiary grounds. First, the identification testimony was clearly relevant. Second, the trial court did not rule that the identifications

---

5. We note in passing that the trial court's error in assessing reliability, for due process purposes, without a required finding of undue suggestivity was compounded by the court's reliance on *Beatty v. United States,* 544 A.2d 699 (D.C.1988). *Beatty* was a sufficiency of the evidence· case where the court had to decide—with respect to the testimony of a single eyewitness—"whether a

reasonable person could find the identification convincing beyond a reasonable doubt, given the surrounding circumstances." *Id.* at 701. That is not the test for reliability in due process identification analysis. *See, e.g., Patterson, supra* note 2, 384 A.2d at 666 n. 4 (citing *Manson v. Brathwaite,* 432 U.S. 98, 114–15, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)).

were so inherently unreliable that they lacked probative value. While we have suggested, in dictum, that a trial court could conclude that a constitutionally admissible identification was, nonetheless, not admissible on standard evidentiary grounds, *see Beatty, supra* note 5, 544 A.2d at 703 n. 6 (D.C.1988), it would take an exceptional case to take such eyewitness testimony about the circumstances of a criminal offense away from the jury. *See Hunter,* 692 A.2d at 1376–77. Brown's arguments concerning lighting conditions, the officers' inability to identify the object in Brown's waistband as a gun, the officers' inability to make an identification based on facial features, and the similarities of physique and clothing of all the individuals in the car, go to the weight of the evidence, not to its admissibility. *See id.*

Our unwillingness to sustain the suppression here, therefore, simply allows the jury, the primary fact-finder, to assess reliability at trial—without affecting the trial court's responsibility, in the end, to grant a motion for judgment of acquittal if no reasonable and impartial trier of fact could have found guilt beyond a reasonable doubt based on the identification and other evidence. *See, e.g., Beatty* supra; *Crawley v. United States,* 320 A.2d 309 (D.C.1974).

\*     \*     \*     \*     \*     \*

The trial court applied the wrong legal standard for suggestivity in assessing the constitutionality of the showup identifications; as a matter of law on this record the identifications were not unduly suggestive; and the officers' identifications are not otherwise inadmissible on evidentiary grounds. We therefore reverse for vacation of the suppression order and remand for further proceedings consistent with this opinion.

*So ordered.*

MACK, Senior Judge, dissenting:

It is fascinating (and somewhat disquieting) to observe how, at the same time, mesmerized deference to legal precedent can defy such precedent. We routinely speak of a "two-part inquiry" that a *defendant* must satisfy "in order to prevail on a motion to suppress identification." *First* we say, that a defendant must establish that the identification procedure was "unduly (or impermissibly) suggestive." Second, we say that a defendant cannot prevail if the "totality of the circumstances" shows "that the identification was nevertheless reliable." (Citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). I do not—I could not—question the soundness of this precedent as a general proposition, especially when applied to post-conviction appeals. I write this "purported" dissent because, in the posture of the instant case, I am disturbed about the conflicting signals that we are giving trial judges with regard to a "sequential" "two-prong test," when today my colleagues broadly declare, "In short: if no undue suggestivity, no suppression—period—without regard to reliability." *See also United States v. Hunter,* 692 A.2d 1370 (D.C.1997). Therefore, under the factual pattern of the record before us, I would not reverse, but remand the case to the trial court in order that she might say the magic words, "I find that there was 'undue suggestivity' in the identification procedure" (a conclusion which I read the record as supporting), before re-entering her finding of unreliability (which likewise is supported).

Let me restate the posture of this case: this is a pretrial appeal brought by the government to reverse a trial court's suppression of an accused's identification. While the government, unquestionably, has the right to appeal the trial court's suppression of evidence (*see* D.C.Code § 23–104(a)(1) (1996)), obviously it does not have an automatic right to reversal. Recognizing therefore that we are bound by the trial court's factual findings, *see United States v. Walton,* 411 A.2d 333, 336 (D.C.1979) (where, in an appeal by the government from the granting of a motion to suppress, we affirmed "although we might have arrived at other conclusions from this evidence than did the trial court"), the government urges that the court applied the wrong legal standard in suppressing the identification. Relying essentially on case law involving post-trial appeals by convicted defendants, the government argues that the trial court *must have* found *first* that the police conduct, in establishing identification,

was *unduly* suggestive *before* it could find (as it did) that the identification was unreliable; therefore, in failing to follow this sequence, the court, in finding unreliability, was usurping the function of a yet-to-be sworn jury in violation of constitutional due process. I have difficulty with this analysis for several reasons.

In the first place, I do not read the record as showing that the trial court *did not* decide the issue of suggestivity. Rather a knowledgeable trial court was parroting what appellate courts have uniformly recited (*i.e.*, that there is inherently a degree of suggestivity in all single show-ups) before pointing out that the suggestivity here was not "fatal"—a latter remark that I construe as indicating her sensitivity to the fact that, even if this suggestivity was beyond the bounds of acceptable police conduct, that did not end the inquiry because "reliability" was the "central question" or "the linchpin" in determining the admissibility of identification testimony.[1] *Biggers, supra,* 409 U.S. at 199, 93 S.Ct. at 382; *Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253. The court's comments, as well as her questions, were indicative of her assessment that Mr. Brown's identification (as the tallest man in a holding or processing area of a cellblock) was not only unduly suggestive, but likewise unreliable under the circumstances leading to that identification.[2]

Second, while we have held (in a case of first impression) that if a police procedure is not unduly suggestive, a trial court did not abuse its discretion when it delayed (at the government's request, and over the objection of a defendant), the finding of reliability until after a victim testified at trial,[3] we have encouraged trial judges, even when finding no suggestivity, to make explicit reliability findings. *Greenwood, supra* note 3, 659 A.2d at 828. More recently, in *Williams v. United States,* we had this to say:

> We take this opportunity to reiterate that it is in the best interest of the government and the defense, and also conducive to the efficient administration of justice, that the trial court rule on the reliability of an identification even when *it does not find that there was undue suggestivity.* We strongly suggest once more that if the identification process is called into question the trial court should rule on both aspects of the inquiry as a matter of course.

*Williams v. United States,* 696 A.2d 1085, 1086 (D.C.1997) (emphasis added) (citing *Greenwood, supra* note 3, 659 A.2d at 828, and *Henderson v. United States,* 527 A.2d 1262, 1269 (D.C.1987)).

In the *Williams* case, we held (in the post-trial review of the defendant's conviction) that the record supported the trial judge's ruling that neither a photo array nor the line-up was "so impermissibly suggestive as

---

1. Thus here the trial court explained:

    The suggestivity is not fatal under the circumstances of this case. That's why it's a two-prong test because there must be inherent reliability after we go past suggestivity *because the identification fails,* and what exactly is this court supposed to look at in determining whether or not the identification fails?

    The trial court, thereafter, went to the "totality of circumstances," beginning with "the opportunity to view," and the fact that appellant was charged with carrying a pistol that no one ever saw until it was thrown from a speeding automobile from the opposite side of the cramped area where appellant was seated. At this time, the court knew from government representations that the gun did not bear the fingerprints of appellant but those of another tall passenger in the car who was arrested but "no papered" along with the remaining four passengers, none of whom were photographed (as was appellant).

    The trial court noted, "The issue is not so much that they can identify [appellant]. The

    issue is whether they can identify him as the perpetrator—the guy with the gun."

2. Indeed this court has held that even unnecessarily suggestive procedures will not support an automatic bar to in-court testimony. Such testimony is not to be suppressed if the trial court finds that under "the totality of circumstances" the identification was reliable. *See Middleton v. United States,* 401 A.2d 109, 133 (D.C.1979) (quotations and citations omitted). *See also Brathwaite, supra,* 432 U.S. at 106, 97 S.Ct. at 2249. *Cf. Allen v. United States,* 697 A.2d 1 (D.C.1997).

3. The trial court observed, "If I am not required to make those determinations at the motions hearing, then I obviously retain some discretion to defer when I am going to make them and I am exercising that discretion." *Greenwood v. United States,* 659 A.2d 825, 828 (D.C.), *cert. denied,* —— U.S. ——, 116 S.Ct. 326, 133 L.Ed.2d 227 (1995).

to give rise to a very substantial likelihood of irreparable misidentification." *Id.* Are we today telling the trial judges that in the absence of a showing of undue suggestivity, they cannot deal with the reliability inquiry unless they are prepared to find reliability (as opposed to unreliability)?

Mr. Brown has not yet gone to trial. He was afforded due process at the pre-trial stage when the government was given the opportunity to prove, that despite police activity which (in view of our differences today as to the record, may or may not have been "unduly suggestive"), was nevertheless reliable on the "totality of circumstances"—facts particularly within the knowledge of the government. The government failed to meet that burden.

Nevertheless, I would remand the record to the trial judge to permit her to clear up any ambiguity as to her findings on the issue of undue suggestivity.