**Roscoe K. LEWIS, Appellant**

v.

**UNITED STATES, Appellee.**

No. 04–CF–1514.

District of Columbia Court of Appeals.

Argued June 5, 2007.

Decided Aug. 23, 2007.

Mindy A. Daniels, appointed by the court, for appellant.

Sharad S. Khandelwal, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy

W. McLeese, III, Lisa H. Schertler, and Gilberto Guerrero, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and THOMPSON, Associate Judges, and TERRY, Senior Judge.

TERRY, Senior Judge:

Appellant, Roscoe Lewis, was convicted of assault with a dangerous weapon and malicious destruction of property (a coat). On appeal he challenges (1) the trial court's failure to declare a mistrial *sua sponte* after a police officer mentioned in his testimony that appellant was homeless, (2) the trial court's failure to take corrective action *sua sponte* when the complainant, on cross-examination, mentioned an out-of-court identification made by a witness who did not testify, and (3) the sufficiency of the evidence to sustain his convictions. We conclude that appellant has not shown any error, and certainly not plain error, with regard to his first two contentions and that the evidence was sufficient to enable reasonable jurors to find guilt beyond a reasonable doubt. Accordingly, we affirm.

## I

Merry Miller testified that on October 21, 2002, at approximately 7:00 p.m., while it was "still daylight," she was walking eastward on F Street, N.W., across the street from the Hotel Monaco. As she approached Seventh Street, she noticed a man—later identified as appellant—wearing a light tan jacket, "casual" pants, and a cap, and carrying a white plastic bag, walking toward her. When they were about twenty feet apart, appellant began yelling "Bitch" at her repeatedly. Ms.

Miller briefly averted her eyes, but resumed eye contact with appellant when he said, "Bitch, I'm talking to you." As the distance between them lessened, appellant blocked Ms. Miller's path, and she looked him in the eye and said, "Sir, please let me pass."

Appellant then displayed a knife in his left hand, with a silver blade five to six inches long, and said, "Come on, be nice now." When Ms. Miller raised her right forearm in a protective gesture, appellant lunged at her with the knife, slashing a four-inch tear in Ms. Miller's "very thick" coat but failing to injure her. Ms. Miller screamed for help and ran across the street to the Hotel Monaco, where she asked a valet and a doorman to call the police. As she looked back, she saw that appellant was still on the sidewalk where the assault had occurred.

Andrei Kourepine, the doorman at the Hotel Monaco, testified that when he heard a scream for help, he turned to look across the street and saw Ms. Miller running toward him. At the same time, he saw a man running west on F Street in the direction of Ninth Street. Mr. Kourepine recognized the man as the person who moments earlier had asked him for a cigarette while Mr. Kourepine was taking a break, a request which Mr. Kourepine had refused without looking at the man's face. Mr. Kourepine recalled that the man had been wearing a gray jacket and carrying a black plastic bag.[1]

Police officers arrived quickly, and Ms. Miller gave them a description of her assailant. According to Ms. Miller's testimony on cross-examination, a hotel valet named Mario[2] also told the officers, "It's

---

1. After initially testifying that appellant had been carrying a white bag, Mr. Kourepine was impeached with his grand jury testimony and amended his testimony to state that the bag had been black.

2. Ms. Miller described Mario as "a guy who parks cars. I call him a valet."

Roscoe." Moments later the officers stopped appellant at the corner of Ninth and F Streets, less than two blocks away. When one of the officers transported Ms. Miller by car to that location for a show-up identification, she recognized appellant by his face and positively identified him as her assailant.[3] As she did so, she noticed that appellant was no longer wearing a jacket, but she saw the jacket on the ground next to him along with the plastic bag he had been carrying. Mr. Kourepine also participated in a show-up and positively identified appellant as the man who had asked him for a cigarette and then had run away shortly after Ms. Miller screamed. Mr. Kourepine's identification was based mainly on appellant's jacket and bag, since he did not get a good look at the man's face.

When the prosecutor asked Officer David Adams, one of the officers on the scene, whether he had searched for any weapons, the officer replied, "Yes, we did." The prosecutor then said to Officer Adams, "Tell us about that," and the officer answered, "Well, of course, we searched him, and we searched the ... surrounding area, with Mr. Lewis being homeless and frequents in that area." Defense counsel immediately objected to Officer Adams' answer, and the court sustained the objection—not on the ground asserted by defense counsel ("no basis"), but because the answer was "not responsive" to the prosecutor's question. The court also struck the answer from the record. The court gave no immediate jury instruction, but later told the jury in its final charge, "If, after a witness answered a lawyer's question, I ruled that the answer should be stricken, you should disregard both the question and the answer in your deliberations."[4]

After the direct examination of Officer Adams had been completed, a juror informed the judge during a recess that she now thought she recognized appellant as one of several homeless individuals whom she had seen harassing women near a Metro station at Seventh and F Streets, N.W., a short distance from the scene of the assault. At a bench conference with the court and counsel, the juror said:

> I come out of that Metro station every day and go into it every evening. And I have experienced homeless people, particularly, I think that man, yelling at women near that location. And when the police officer mentioned—I know it's not supposed to be on the record—that he was homeless, I believe that I have seen him before.

Upon hearing this,[5] the court excused this juror from the jury and replaced her with an alternate. Neither counsel objected.

At the close of the government's case, the court denied defense counsel's motion for judgment of acquittal. The defense then rested without calling any witnesses; counsel's renewed motion for judgment of acquittal was again denied. The jury in due course found appellant guilty on both counts.

---

**3.** Ms. Miller initially could not identify appellant because his back was to her, and she could not see his face. However, after he was brought under a street light closer to the police car in which Ms. Miller was sitting, she made a positive identification. Ms. Miller also identified appellant at trial. Although her lookout description did not mention that her assailant had facial hair, appellant's arrest photograph showed that he had a mustache and other "scruffly" hair.

**4.** In its preliminary instructions at the beginning of the trial, the court told the jury to disregard, without any speculation, any question to which an objection was sustained, but the court did not explicitly mention that the jury should disregard stricken testimony.

**5.** The juror also assured the court that she had not mentioned her observations to any of the other jurors.

## II

▬ Appellant contends that the trial court abused its discretion by failing to declare a mistrial *sua sponte* after Officer Adams mentioned that appellant was homeless. Appellant claims that this statement was unduly prejudicial because it stigmatized him, suggested that he might be mentally ill, and contradicted information provided in the *voir dire* that appellant lived at 1350 R Street, N.W.[6] Because the prosecutor described the crime as a "random act of violence," appellant asserts, "[s]imply striking the testimony and giving the standard instruction was not enough, in this particular case, to cure the resulting prejudice." We are satisfied that the trial court did not abuse its discretion when it failed to declare a mistrial *sua sponte.*

▬ The decision to grant a mistrial "has always been committed to the sound discretion of the trial court and as such, on appeal, a decision should be reversed only in extreme situations threatening a miscarriage of justice." *Clark v. United States,* 639 A.2d 76, 78–79 (D.C.1993) (citation omitted). Furthermore, appellant concedes that our review is only for plain error, since no mistrial was requested at the time the remark about homelessness

was made. *See McGriff v. United States,* 705 A.2d 282, 288 (D.C.1997). Thus, in determining whether there was plain error, this court must consider "whether the judge compromised the fundamental fairness of the trial, and permitted a clear miscarriage of justice, by not intervening *sua sponte* ...." *Id.* (quoting *Hunter v. United States,* 606 A.2d 139, 145 (D.C.), *cert. denied,* 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992)). Applying this standard to the present case, we are satisfied that no plain error occurred.[7]

First, the prosecutor did nothing wrong. The comment about appellant's homelessness came unexpectedly, when Officer Adams mentioned it casually in the course of an answer to a question about whether he had searched for any weapons ("Tell us about that," referring to the search). Defense counsel immediately objected, and after a brief bench conference, the court struck the answer as "not responsive."[8] Second, the court not only struck the answer from the record but later instructed the jury not to consider stricken testimony, and we must presume that a jury follows the court's instructions, absent any indication to the contrary. *See, e.g., Harris v. United States,* 602 A.2d 154, 165 (D.C.1992). Third, the government had a strong case based on the victim's identifi-

---

**6.** This is the address of the Central Union Mission, which provides shelter and other support to homeless persons.

**7.** We have "recognize[d] that there are situations where, as a matter of strategy, defense counsel may decide that it is more effective simply to let a potentially prejudicial remark pass, rather than drawing attention to it further by requesting a curative instruction." *Clark,* 639 A.2d at 80. Appellant notes in his brief that defense counsel's failure to raise certain objections is a "subject to be ventilated" in a future motion to be filed pursuant to D.C.Code § 23–110 (2001).

**8.** The prosecutor, at the bench conference, agreed that the answer was "not relevant. I

think it just came out on his part." When the questioning resumed, the prosecutor said to the officer, "Just let's focus on [the weapons search]. Tell us where you searched and what, if anything, you found." The officer said nothing further about appellant's homelessness.

Appellant contends that the government should have been "on notice of what Officer Adams' testimony might be" because the officer had also mentioned homelessness in his grand jury testimony. Although the witness might have been better prepared so as to avoid any reference to homelessness, under the circumstances we cannot fault the prosecutor for an answer that was not responsive to the question that was actually asked.

cation of appellant and a corroborating identification by Mr. Kourepine. Finally, appellant's claim of prejudice is purely speculative, premised on the notion that the jury might have believed that appellant was mentally ill because he was homeless (when no evidence of mental illness was presented) and that such mental illness explained why appellant might commit a "random act of violence." There is no record support for any such speculation.

Cases directly on point are hard to find, but available case law tends to support affirmance here. For example, in *Slye v. United States*, 602 A.2d 135 (D.C.1992), an armed robbery case, the appellant challenged the admission of testimony that he slept in his car while it was being repaired at a service station and that on one occasion he had taken back part of the money he had previously paid for the repairs. We rejected the argument that this evidence had been offered "to establish his poverty as a motive for the robbery," concluding instead that, on the facts of the case, "this evidence was relevant to the issue of identity." *Id.* at 140. While we agreed that "[t]estimony about a defendant's poor financial state is generally not admissible to prove a motive for robbery or theft because its prejudicial effect outweighs its probative value," *id.* (citation omitted), the prompt limiting instruction which the court gave "was sufficient to overcome any prejudice." *Id.* at 141.[9] In the instant case the trial judge took similar corrective action, immediately striking the officer's answer from the record and later,

in her final instructions, telling the jury to "disregard" not only the stricken answer but also the question that elicited it. *See also United States v. Fletcher*, 121 F.3d 187, 196–197 (5th Cir.1997) (concluding that any prejudice resulting from the prosecutor's reference to defendant's homelessness in closing argument was "slight" because the comment was "inconsequential and ... made only in passing"); *cf. Reams v. United States*, 895 A.2d 914, 924 n. 5 (D.C.2006) (testimony that witness and defendant "sold drugs together" was not so prejudicial as to require a mistrial; trial judge immediately struck the testimony and told jury to disregard it); *Smith v. United States*, 665 A.2d 962, 966 (D.C. 1995) (testimony in a murder trial that defendant "always wore a bullet-proof vest" was not so prejudicial as to require a mistrial; defense counsel declined trial judge's offer of a cautionary instruction); *Hardy v. United States*, 119 U.S.App. D.C. 364, 365, 343 F.2d 233, 234 (1964), *cert. denied*, 380 U.S. 984, 85 S.Ct. 1353, 14 L.Ed.2d 276 (1965) (statement by witness that he and defendant "did time in the penitentiary together" held insufficient to require a mistrial; defense counsel declined trial judge's offer of a corrective instruction).

We therefore hold that, on the record before us, appellant has not met his burden of demonstrating that a mistrial was necessary to avoid a miscarriage of justice. It follows that the trial court did not commit plain error by failing to declare one *sua sponte.*[10]

9. The trial judge had already cautioned the prosecutor to avoid eliciting any testimony "that is going to have as its primary probative impact that Mr. Slye is a bum that sleeps in cars around the gas station." *Slye*, 602 A.2d at 141.

10. We reject appellant's assertion that two subsequent remarks by Officer Adams during cross-examination prejudicially "alluded to Mr. Lewis' homeless status." Defense coun-

sel asked Officer Adams if he knew whether appellant had facial hair, and the officer replied, "I've seen him on other occasions, so I can't say in the top of my head whether he had facial hair that night or not." Later, defense counsel asked Officer Adams whether appellant was right-handed, and the officer replied, "I don't know him that intimately. I do know him from just being out there, but not like that." These statements did not explicitly mention homelessness, nor were they

### III

■ Appellant contends that the rule against hearsay was violated, and that he was denied his Sixth Amendment right of confrontation, when the trial court failed to take corrective action *sua sponte* after Ms. Miller testified that a hotel valet named Mario told the police, with regard to the identity of her assailant, that "It's Roscoe." Because no objection to this testimony was made in the trial court on either hearsay or Confrontation Clause grounds, appellant concedes that we must review only for plain error. *See Marquez v. United States,* 903 A.2d 815, 817 (D.C.2006). "On plain error review, an appellant must show that the objectionable action was (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citing *United States v. Olano,* 507 U.S. 725, 732–736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

■ Reviewing appellant's claim of error in context, we are satisfied that the trial court's failure to act *sua sponte* provides no basis for reversal. In the first place, this "error" was created entirely by the defense; the testimony about the valet's statement was elicited and developed by defense counsel during his cross-examination of Ms. Miller, and was mentioned only by defense counsel during closing argument.[11] " 'Thus the error that occurred, if any, was invited by defense counsel.' . . . It is well established that a defendant 'cannot well complain of being prejudiced by a situation which [he] created.' " *Parker v. United States,* 757 A.2d 1280, 1286–1287 (D.C.2000) (citations omitted).

■ Furthermore, it is clear to us that appellant's hearsay and Confrontation Clause arguments are both without merit. Appellant's hearsay challenge is defeated by the fact that the defense elicited and made use of this statement, not for the truth of its assertion that "Roscoe" committed the crime (which, obviously, was contrary to the defense theory), but to show that the statement had been made, in order to suggest that the effect of the statement was a "rush to judgment" by the police officers and a contaminated identification of appellant by Ms. Miller. "[T]his court has routinely recognized out-of-court statements as non-hearsay when they are used to show the effect on the listener and not to prove their truth." *In re Dixon,* 853 A.2d 708, 712 (D.C.2004) (citations omitted).

■ Appellant's Sixth Amendment challenge similarly fails. We need not decide whether Mario's remark, "It's Roscoe," was a "testimonial" statement for Sixth Amendment purposes. *See Davis v. Washington,* —— U.S. ——, —— – ——, 126 S.Ct. 2266, 2273–2274, 165 L.Ed.2d 224 (2006) (distinguishing between testimonial and non-testimonial statements). Even if we were to assume that the statement was testimonial, it was relied upon *by the de-*

---

made in the immediate context of the reference to appellant's homeless status. Moreover, the statements were elicited by defense counsel, without any objection, in an attempt to discredit Ms. Miller's identification of appellant. "Courts are especially reluctant to reverse for plain error when it is 'invited.' " *McClain v. United States,* 871 A.2d 1185, 1192 (D.C.2005).

We also find no basis for reversal in the excused juror's recollection that she believed she had seen appellant "yelling at women" in the same general area where the crime occurred. We agree with the government that "while appellant's homeless status helped to trigger this memory on the part of the juror, the record does not show that [she] felt biased against appellant due to his homelessness," nor does it indicate in any way "that other jurors were biased or prejudiced against appellant on this basis."

11. Appellant is represented by different counsel on appeal.

*fense* solely to prove its effect on those who heard it, and the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

■ Finally, appellant has not shown that the admission of Mario's out-of-court identification, even if it was error, was prejudicial to his defense. Defense counsel made full, intentional use of the statement in an attempt to discredit Ms. Miller, and Mario's additional identification of appellant was merely cumulative of the identifications by Ms. Miller and Mr. Kourepine. We are therefore satisfied that the trial court did not commit plain error by failing to take corrective action *sua sponte* when the defense elicited Mario's statement "It's Roscoe" during the cross-examination of Ms. Miller.

### IV

■ Appellant's final contention is that the evidence presented at trial was "completely contradictory" and thus insufficient for conviction because "Ms. Miller did not recall giving a description of her assailant as having facial hair," even though appellant had a mustache when he was arrested, and because there were discrepancies between the testimony of Ms. Miller and Mr. Kourepine as to the description of the assailant and as to whether the assailant ran from the scene immediately or remained in the same spot while Ms. Miller ran across the street.

■ "In evaluating a claim of evidentiary insufficiency, we must view the evidence in a light most favorable to the government, recognizing the jury's province to weigh the evidence, determine the credibility of witnesses, and make justifiable inferences from the evidence.... [R]eversal for insufficiency of the evidence will be warranted 'only if there is no evidence upon which a reasonable mind might conclude guilt beyond a reasonable doubt.'" *Peterson v. United States,* 657 A.2d 756, 760 (D.C.1995) (citations omitted).

■ "Even identification testimony of a single eyewitness will be sufficient so long as a 'reasonable person could find the identification convincing beyond a reasonable doubt, given the surrounding circumstances.'" *Id.* (citing *Beatty v. United States,* 544 A.2d 699, 701 (D.C.1988)). "Factors relevant to our determination include 'the ability of the witness to make a meaningful identification—the witness' opportunity to observe and the length of time of the observations, the lighting conditions, the length of time between the observations and the identifications, the stimuli operating on the witness at the time of observation, as well as the degree of certainty expressed by the witness in making the identifications.'" *Id.* "Even if discrepancies exist between the witness' description of the defendant and his actual appearance ... the conviction must still be affirmed if there are other factors showing that the identification is reliable. Such discrepancies affect only the weight of the evidence, not its sufficiency or admissibility, and are properly left for the jury to evaluate in the exercise of its sound discretion." *Hill v. United States,* 541 A.2d 1285, 1287 (D.C.1988).

Ms. Miller had ample time to observe appellant's face as the two of them approached each other on the sidewalk, while making near-continuous eye contact and while it was still daylight. Just a few minutes later, she made a positive show-up identification of appellant based on her recognition of his face, and subsequently she identified appellant at trial. Appellant has failed to demonstrate any hindrance to Ms. Miller's ability to make a meaningful identification.

Moreover, Ms. Miller's identification of appellant did not stand alone. It was corroborated by Mr. Kourepine's identification of appellant as the man who fled after Ms. Miller screamed. Although there were minor discrepancies between the testimony of Ms. Miller and Mr. Kourepine concerning appellant's appearance and behavior, "contradictions among witnesses at trial are inevitable and are matters for the jury to resolve as they weigh all the evidence." *Payne v. United States,* 516 A.2d 484, 495 (D.C.1986). We hold that, given the evidence presented, reasonable jurors could find appellant guilty beyond a reasonable doubt of the crimes with which he was charged.

V

For all of these reasons, the judgment of conviction is

*Affirmed.*